UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN COLBRY, et al., | Civil Action No. 17-003-BRM |
| Petitioners, | |
| v. | **OPINION** |
| LISA VON PIER, et al., | |
| Respondents. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Petitioners Brian and Stephanie Colbry's ("Petitioners") Motion for Reconsideration of this Court's dismissal of their petition for a writ of habeas corpus, brought on behalf of A.L., a minor child related to both Petitioners, pursuant to 28 U.S.C. § 2254. (ECF No. 6.) Respondents oppose the motion. (ECF No. 16.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, the motion is **DENIED**.

**I. BACKGROUND**

Petitioners, A.L.'s biological grandfather and aunt, filed a habeas petition challenging the New Jersey Division of Child Protection & Permanency's (the "Division") care and custody of A.L. in several foster homes and group settings. (Habeas Petition (ECF No. 1) ¶¶ 1-41.) According to Petitioners, as of June 13, 2016, the Division obtained legal custody of A.L. via a proceeding instituted in the Superior Court of New Jersey, Hunterdon County, Family Part, brought pursuant to New Jersey Statute section 30:4C-12 *et seq*. (*Id.* ¶ 13.) Petitioners attempted to litigate the custody and care of A.L. in both the New Jersey courts and in federal court through their petition

1

for a writ of habeas corpus. (*Id.*) Litigation in state court appears to be ongoing, at least as to the visitation rights of Petitioners in relation to A.L. (*See B.C. v. N.J. Div. of Child Prot. & Permanency*, 450 N.J. Super. 197 (App. Div. 2017) (ECF No. 18-1).)

On January 2, 2017, Petitioners filed their petition for a writ of habeas corpus, challenging A.L.'s "custody" on his behalf as "next friends" of A.L. (ECF No. 1.) On February 16, 2017, the Court screened the petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases and dismissed the petition for lack of jurisdiction. (ECF Nos. 4-5.) In that decision, the Court noted it was not clear whether next friend jurisdiction existed to grant Petitioners standing to bring their petition, but ultimately found the Court lacked jurisdiction over a petition challenging the custody and care of a minor who had been placed in the foster care system by the state, and that the petition therefore had to be dismissed even assuming next friend jurisdiction were available to Petitioners. (ECF No. 4 at 4-9.) On March 2, 2017, Petitioners filed their motion for reconsideration. (ECF No. 6.) Respondents oppose the motion (ECF No. 16.) On May 14, 2017, Petitioners filed a reply in which they argue certain characterizations made in Respondents opposition amount to a "fraud upon the court," based on situations that occurred *after* the filing of Petitioners' habeas petition. (ECF No. 18.)

## II. LEGAL STANDARD

Whether brought pursuant to Local Civil Rule 7.1(i) or pursuant to Federal Rule of Civil Procedure 59(e), the scope of a motion for reconsideration is extremely limited, and such motions should only be granted sparingly. *Delanoy v. Twp. Of Ocean*, No. 13-1555, 2015 WL 2235103, at *2 (D.N.J. May 12, 2015) (discussing Local Civil Rule 7.1(i)); *see also Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (discussing Rule 59(e)). An order of the Court may be altered or amended pursuant to such a motion only where the moving party establishes one of the following grounds

2

for relief: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact to prevent manifest injustice." *Delanoy*, 2015 WL 2235106 at *2 (quoting *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)); *see also Blystone*, 664 F.3d at 415 (applying same standard to 59(e) motions). In the context of a reconsideration motion, manifest injustice will generally arise only where "the Court overlooked some dispositive factual or legal matter that was presented to it," or committed a "direct, obvious, and observable" error. *See Brown v. Zickefoose*, No. 11-3330, 2011 WL 5007829, at *2, n.3 (D.N.J. 2011). Reconsideration motions may not be used to relitigate old matters, raise new arguments, or present evidence or allegations that could have been raised prior to entry of the original order. *Delanoy*, 2015 WL 2235106 at *2. As such, courts should grant a motion for reconsideration only where its prior decision "overlooked a factual or legal issue that may alter the disposition of the matter." *Id.*

**III. DECISION**

In their motion for reconsideration, Petitioners present two arguments: (1) "next friend" jurisdiction is appropriate in this matter, a point which this Court's prior order did not decide but assumed *arguendo* to be the case; and (2) this Court should find habeas jurisdiction exists based on the summary of the common law history of the writ of habeas corpus provided by the dissent in *Lehman v. Lycoming Cty. Children's Servs. Agency*, 458 U.S. 502 (1982). (*See* ECF No. 6-1.) Essentially, Petitioners argue the Division's foster care system, regardless of whether a child is placed in an institution or a foster home, is more restrictive than any system imagined by the majority in *Lehman* and that a foster home in New Jersey is essentially the same as an institution, therefore habeas jurisdiction exists. (*Id.* at 12-13.)

3

There are several complications with Petitioners' argument. First, as this Court explained in its original opinion, the Court has jurisdiction to hear a writ of habeas corpus petition under § 2254 only for those individuals who are "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Although the definition of "custody" for § 2254 has been expanded beyond mere criminal detention to include those under parole supervision or subject to certain classes of collateral consequences, this "in custody" requirement is only met where the individual in question is "subject both to significant restraints on liberty . . . which were not shared by the public generally, along with some type of continuing governmental supervision." *Obado v. New Jersey*, 328 F.3d 716, 717 (3d Cir. 2003). In their habeas petition, Petitioners asserted A.L. was placed in various group homes or shelters and was only recently moved into foster care. (ECF No. 1 ¶¶ 39-41.) Petitioners now assert A.L. has been in an "institutional setting" since mid-February. (*See* ECF No. 18-1 at 4.)

As this Court explained, the Supreme Court has held a child being placed into foster care does not involve sufficient restraints on the child's liberty to qualify as being "in custody" for the purposes of habeas jurisdiction. *See Lehman*, 458 U.S. at 509-15. The Supreme Court majority in *Lehman* explained:

> Although the language of § 2254(a), especially in light of § 2241, suggests that habeas corpus is available only to challenge the convictions of prisoners actually in the physical custody of the State, three modern cases have extended it to other situations involving challenges to state-court decisions. The first of these cases is *Jones v. Cunningham*, 371 U.S. 236[] (1963), in which the Court allowed a parolee to challenge his conviction by a habeas petition. The Court considered the parolee in "custody" for purposes of § 2254(b) because "the custody and control of the Parole Board involve significant restraints on petitioner's liberty . . . which are in addition to those imposed by the State upon the public generally." [*Jones*,] 371 U.S. [] at 242[.] And in *Carafas v. LaVallee*, 391 U.S.

4

234[] (1968), the Court allowed the writ in a challenge to a state-court judgment even though the prisoner, incarcerated at the time the writ was filed, had finished serving his sentence during the proceedings. The custody requirement had, of course, been met at the time the writ was filed, and the case was not moot because Carafas was subject to "[]collateral consequences[]" as a result of his conviction, *id.*[] at 237[], and "is suffering, and will continue to suffer, serious disabilities[]." *Id.*[] at 239[]. Most recently, in *Hensley v. Municipal Court*, 411 U.S. 345[] (1973), the Court allowed the writ to be used to challenge a state-court conviction even though the defendant had been released on his own recognizance after sentencing but prior to the commencement of his incarceration. The Court held that the defendant was in the custody of the State for purposes of § 2254(b) because he was "subject to restraints 'not shared by the public generally,'" 411 U.S.[] at 351 [](citation omitted)—indeed, his arrest was imminent.

Thus, although the scope of the writ of habeas corpus has been extended beyond that which the most literal reading of the statute might require, the Court has never considered it a generally available federal remedy for every violation of federal rights. Instead, past decisions have limited the writ's availability to challenges to state-court judgments in situations where—as a result of a state-court criminal conviction—a petitioner has suffered substantial restraints not shared by the public generally. In addition, in each of these cases the Court considered whether the habeas petitioner was "in custody" within the meaning of § 2254.

[The petitioner] argues that her sons are involuntarily in the custody of the State for purposes of § 2254 because they are in foster homes pursuant to an order issued by a state court. Her sons, of course, are not prisoners. Nor do they suffer any restrictions imposed by a state criminal justice system. These factors alone distinguish this case from all other cases in which this Court has sustained habeas challenges to state-court judgments. Moreover, although the children have been placed in foster homes pursuant to an order of a Pennsylvania court, they are not in the "custody" of the State in the sense in which that term has been used by this Court in determining the availability of the writ of habeas corpus. They are in the "custody" of their foster parents in essentially the same way, and to the same extent, other children are in the custody of their natural or adoptive parents. Their situation in this respect differs little from the situation of other children in the public generally; they suffer no unusual restraints not imposed on other children. They certainly suffer no restraint on liberty as that term is used in *Hensley* and *Jones*, and they suffer no "collateral consequences"—like those

5

> in *Carafas*—sufficient to outweigh the need for finality. The "custody" of foster or adoptive parents over a child is not the type of custody that traditionally has been challenged through federal habeas. [The petitioner] simply seeks to relitigate, through federal habeas, not any liberty interest of her sons, but the interest in her own parental rights.
>
> Although a federal habeas corpus statute has existed ever since 1867, federal habeas has never been available to challenge parental rights or child custody. Indeed, in two cases, the Court refused to allow the writ in such instances. *Matters v. Ryan*, 249 U.S. 375[] (1919); *In re Burrus*, 136 U.S. 586[] (1890). These decisions rest on the absence of a federal question, but the opinions suggest that federal habeas corpus is not available to challenge child custody. Moreover, federal courts consistently have shown special solicitude for state interests "in the field of family and family-property arrangements." *United States v. Yazell*, 382 U.S. 341, 352[] (1966). Under these circumstances, extending the federal writ to challenges to state child-custody decisions-challenges based on alleged constitutional defects collateral to the actual custody decision-would be an unprecedented expansion of the jurisdiction of the lower federal courts.

458 U.S. at 508-12 (footnotes omitted). The Supreme Court concluded neither the termination of parental rights nor the taking of one's children into state custody via a foster home is sufficient to meet the custody requirement of § 2254, and habeas corpus jurisdiction does not exist to challenge judgments causing those events as a result. *Id.* at 515-16.

As this Court stated in its opinion, however, the Supreme Court left open the question of whether "a child confined in a state institution rather than being at liberty in the custody of a foster parent pursuant to a court order" is "in custody." *Id.* at 511 n.12. While neither the Third Circuit nor the Supreme Court has taken up that question, this Court is aware of no cases finding habeas jurisdiction exists to challenge state custody of a child after *Lehman*. The Eighth Circuit court has held whether an individual is "in custody" should not "turn on [the Division's] determination that [the child] would be better able to receive the type of educational and psychological services he needed in the structured settings of institutions, rather than in a private foster home" and instead

6

gave weight to whether "the state incarcerated [the child ]or imposed penal restrictions upon him." *Amerson v. State of Iowa, Dep't of Human Servs*, 59 F.3d 92, 94 (8th Cir. 1995).

Based on this case law, the Court found habeas jurisdiction did not exist because A.L. was not in habeas "custody," as nothing in the petition suggested A.L. was subject to penal restrictions or actual incarceration, but rather he had simply been placed into the Division's foster care system in the form of shelters and foster homes. *See Lehman*, 458 U.S. at 510-11 (children in foster care differ "little from the situation of other children in the public generally, they suffer no unusual restraints not imposed on other children"). Petitioners provide no change in the case law or "new evidence" which was not previously available, but instead insist the Court overlooked the "common law" underpinning the writ of habeas corpus proposed by the dissent in *Lehman*. (ECF No. 6-1 at 12-13.) That dissent, however, runs counter to the conclusions of the *Lehman* majority, that federal courts should not seek to expand federal habeas jurisdiction to impugn the "special solicitude" provided to the interests of the states and state courts regarding finality in child and family issues. *Lehman*, 458 U.S. at 512. Neither the *Lehman* dissent nor Petitioners' arguments provide a valid basis for the Court to overturn its earlier decision, which directly and correctly applied *Lehman* and its progeny.

The Court notes that in one of their reply briefs, Petitioners informed the Court that A.L. was moved into an institutional setting on February 23, 2017, *after* this Court dismissed this matter. (ECF No. 18.) Petitioners also assert Respondents fraudulently misrepresented to and/or omitted from its submissions to this Court that A.L. was institutionalized. (*Id.* at 2-7.) The Court finds no basis for concluding Respondents have committed a "fraud upon the Court," especially if A.L. was "institutionalized" after this Court issued its opinion.

To the extent Petitioners contend this new institutional setting has a bearing on whether habeas jurisdiction exists, the existence of habeas jurisdiction is determined based on the status of the subject of the petition at the time the petition was filed, and not based on events occurring thereafter. *See, e.g., Carafas*, 391 U.S. at 238 (noting that petitioner must be "in custody" at the time the petition is filed for habeas jurisdiction to exist); *see also Maleng v. Cook*, 490 U.S. 488, 490-91 (1989); *Young v. Vaughn*, 83 F.3d 72, 73 (3d Cir. 1996). Therefore, Petitioner being placed into an institution *after* his petition had not only been filed, but, indeed, after it was dismissed, has no bearing on the jurisdictional question presented by this habeas petition.[1] Because Petitioners present no clear error of law or fact made by the Court, they have not provided any basis for reconsideration, and therefore their motion is **DENIED**.

IV. **CONCLUSION**

For the reasons stated above, Petitioners' motion for reconsideration (ECF No. 6) is **DENIED**. An appropriate order will follow.


Date: August 17, 2017                      */s/ Brian R. Martinotti*
                                           **HON. BRIAN R. MARTINOTTI**
                                           **UNITED STATES DISTRICT JUDGE**

---

[1] Notably, Petitioners have not demonstrated the institution into which A.L. was placed represents "incarceration" or the imposition of "penal" restrictions, rather than simply the taking of one's child into state custody via a foster home. *Lehman*, 458 U.S. at 511 n.12; *Amerson*, 59 F.3d at 94. Therefore, habeas jurisdiction does not exist in this matter even if the Court were to consider A.L.'s later placement into an unspecified "institutional" setting.